INSURANCE COMPANY SPONSORED COVERAGE
FOR INSURANCE AGENTS AND BROKERS
PROFESSIONAL LIABILITY

JUN 1 3 1997

GENERAL STAR INDEMNITY COMPANY
STAMFORD, CONNECTICUT
(hereinafter called the Company)

GENERAL STAR
C.M.

THIS IS A CLAIMS MADE AND REPORTED POLICY - PLEASE READ CAREFULLY

DECLARATIONS

Policy No. IYA271202-6

Item 1. Named Insured:     The Prudential Insurance Company of America
                           (Enrolled Outbrokerage Representatives)

Item 2. Address:           213 Washington Street
                           Newark, NJ 07102

Item 3. Policy Period:     From February 1, 1997   To: February 1, 1998

Item 4. Deductible:    $1,000    each claim
        (Damages only)

THIS INSURANCE IS ISSUED PURSUANT TO THE NEW JERSEY SURPLUS LINES LAW.

Item 5. Limit of Liability (Inclusive of Loss and Defense Costs)

        (a)    $2,000,000    each claim, subject to an annual aggregate limit of $2,000,000 each
                             Outbrokerage Representative.

Item 6. Premium:    $2,400,000.00 (subject to adjustment)
                    $   72,000.00 state tax
                    $2,472,000.00

Item 7. Policy form and Endorsements attached at inception.
        GSI-PRU-02 (2/96); GSI-PRU-11 (2/97); GSI-52-I600 (3/93);
        GSI-PRU-14 (2/97); GSI-PRU-15 (2/97)

_____  _____    _____
Countersignature            Date        Authorized Representative

GSI-PRU-11 2/97                      -1-

EXHIBIT "3"

GS01992

General Star Indemnity Company, hereinafter called the Company, agrees with the Named Insured in consideration for the payment of the premium and in reliance upon the statements in the Declarations and subject to all of the terms of this policy, as follows:

## SECTION I

### COVERAGE

(A) The Company agrees to pay on behalf of the "insured agent" such "loss" in excess of the applicable deductible and within the limit of liability specified in the Declarations sustained by the "insured agent" by reason of liability imposed by law for damages caused by any negligent act, error or omission by the "insured agent" or any person for whose acts the "insured agent" is legally liable including any claim for libel, slander or invasion of privacy against the "insured agent", not excluded hereunder arising out of the conduct of the business of the "insured agent" in rendering "professional services for others as:

  (1)   an Enrolled Outbrokerage Representative selling and/or servicing non-Prudential Life and Accident and Health products while licensed as an agent with Prudential.

  (2)   a licensed property and casualty agent selling and/or servicing non-Prupac personal lines insurance, but only as respects such representatives for whom coverage is elected and payment of premium for such coverage is reflected on the roster maintained by the Named Insured.

  (3)   providing property and casualty referrals.

  (4)   a notary public.

(B) The Company agrees to pay on behalf of the Named Insured "loss" in excess of the applicable deductible and within the limit of liability specified in the Declarations sustained by the Named Insured by reason of vicarious liability imposed by law for the covered negligent acts, errors or omissions of its "insured agents" as specified under Section I(A).

As respects both Coverages A and B, this policy will cover claims first made against the "Insured" and reported to the Company during the policy period or any applicable extension period. This policy shall apply to claims arising out of negligent acts, errors or omissions committed prior to the inception date of coverage under this policy, and not excluded hereunder, but only if such negligent acts, errors or omissions:

  (a)   took place while the "insured agent" was licensed with Prudential Insurance Company of America; or
  (b)   the claim was first made against the "insured agent" during the policy period;
  (c)   and the "insured agent" had no knowledge of such claims as of the inception date of his or her coverage under this policy; and no other valid and collectible insurance is available to the "insured agent" for the claim in question.

## SECTION II

**DEFENSE AND SETTLEMENTS.** The Company, in the "Insured's" name and behalf, shall have the right and duty to investigate, defend, conduct settlement negotiations and enter into settlements in any claim or suit for which coverage is provided under the terms of this policy.

The "Insured" shall cooperate with the Company, and, upon the Company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits.

GSI-PRU-11 2/97                             -2-

GS01993

The "Insured" shall not admit liability for, nor make any voluntary settlement, nor incur any costs or expenses in connection with any claim involving payment by the Company, except with the written consent of the Company.

## SECTION III

**DEFENSE EXPENSES AND SUPPLEMENTARY PAYMENTS.** With respect to such insurance as is afforded by this policy, and <u>subject to the Limit of Liability</u> the Company shall pay,:

(a) all expenses incurred in the defense of any claim or suit against the "Insured" alleging such negligent act, error or omission, and seeking damages on account thereof, even if such claim or suit is groundless, false, fraudulent, or for an amount less than the "Insured's" deductible;

(b) all premiums on bonds to release attachments and appeal bonds, limited to that portion of such bond that does not exceed the limit of liability of this policy, but without any obligation to apply for or furnish such bonds;

(c) all costs taxed against the "Insured" in any suit and all expenses incurred by the Company;

(d) all interest accruing after the entry of judgment, but only for that portion of the judgment which does not exceed the applicable limit of liability, until the Company has tendered or paid such part of such judgment as does not exceed the Company's limit of liability thereon; and

(e) all reasonable expenses incurred by the "Insured" at the Company's request in assisting the Company in the investigation and defense of any claim or suit, other than "loss" of offerings.

Provided, the Company shall not pay any defense expenses or supplementary payments arising out of or incurred in the investigation, settlement or defense of any allegations of wrongful conduct by the Named Insured.

## SECTION IV

**LIMIT OF LIABILITY AND DEDUCTIBLE.** The liability of the Company for "loss" on account of claims first made against the "Insured" and reported to the Company, (1) during the policy period, or (2) during the policy period together with the extension period, shall be limited to the applicable amount stated in Item 5 of the Declarations. Each limit of liability set out in Item 5 limits of liability and the "each agent each policy period" shall apply to both Coverages A and B combined.

The largest "each claim" limit of liability that applies to any one involved "Insured" shall be the maximum that the Company will pay for all "insureds" for any claim arising out of, or in connection with the same negligent act, error, or omission (including any claim for libel, slander, or invasion of privacy). Two or more claims arising out of a single act, error, or omission, or "related errors or omissions" shall be treated as a single claim. All such claims, whenever made, shall be considered one claim that is first made and reported to the Company during the policy period or extended reporting period in which the earliest claim arising out of such acts, errors or omissions or "related acts errors or omissions" (including any claim for libel, slander or invasion of privacy) was first made and all such claims shall be subject to the same Policy Limit.

The deductible, as stated in Item 4 of the Declarations, shall apply to payment of "loss" on each claim instituted against the "insured agent".

Should the Company, for any reason, pay the entire amount of "loss" without regard to the deductible the "insured agent" will reimburse the Company, within 30 days of the Company's request for such reimbursement, for that part of the deductible which has been paid.

The limit of liability as stated in Item 5 of the Declarations shall apply in excess of the deductible.

G501994

SECTION V

**DEFINITIONS.** Whenever used in this policy:

(A) The term "insured agent" shall mean any Enrolled Outbrokerage Representative of the Named Insured who is included on the roster, or subject to inclusion on the next roster, maintained by the Named Insured and used by the Named Insured as the means of certifying the number of agents "Insured" under this policy, including:

   (1) any employee of the "Insured" representative while acting within the scope of the employee's duties as such; however, such coverage does not include employees acting as agents, sub-agents, brokers or sub-brokers who are licensed by any insurance or other regulatory authority to sell life and accident & health insurance;

   (2) any heir, executor, administrator, assignee or legal representative of the "insured agent" in the event of the "insured agent's" death, incapacity or bankruptcy;

   (3) the agency under which the "insured agent" is doing business or is employed, but only as respects such agency's liability as it might arise out of the "insured agent's" activities specified as covered elsewhere in this policy;

   (4) any Marketing Assistant or employee of the Named Insured not otherwise covered hereunder who is acting under the direction of or in behalf of an "insured agent"; and acting on behalf of the Enrolled Outbrokerage Representatives covered in this policy.

(B) The unqualified term "Insured" shall mean:

   (1) the Named Insured, but only as respects its vicarious liability arising out of any negligent act, error or omission by licensed agent as described in Section V (B) (2); or

   (2) any "insured agent."

(C) The word "loss" includes such amounts payable by the "Insured" in settlement of claims or in satisfaction of awards and judgments up to the policy limits.

(D) the phrase "claims first made against the "Insured" and reported to the Company" shall mean:

   (1) the earliest notice of legal process received by the "Insured", the earliest demand for money or services made against the "Insured"; or

   (2) a proceeding, event or development which could in the future result in the institution of a claim or suit against the "Insured" of which the "Insured" has first become aware during the policy period;

   which the "Insured" has reported to the Company during the policy period.

(E) The term "placement" with regard to Multiple Employer Welfare Arrangements shall mean the securing, binding, contracting, effecting, arranging, transacting, negotiating, facilitating, acquiring, attaching, purchasing or renewing of coverage directly or indirectly on behalf of a third party or the advising or consulting in connection therewith.

(F) The term "placement date" with regard to Multiple Employee Welfare Arrangements shall mean the initial effective date, renewal date, anniversary date for re-rate date.

(G) The term "related errors or omissions" shall mean any negligent acts, errors or omissions (including any claims for libel, slander or invasion of privacy) which have as a common nexus any fact, circumstance, situation, event, transaction or series of causally connected facts, circumstances, situations, events or transactions.

(H) The term "professional services" shall mean the sale and or servicing of life, accident, health and disability insurance products other than the Prudential Insurance Company of America and/or its subsidiaries.

## SECTION VI

**EXCLUSIONS.** This policy does not apply to:

(a) any dishonest, fraudulent, criminal or malicious act, or assault or battery committed by or contributed to by the "Insured" or "Insureds";

(b) bodily injury to, or sickness, disease or death of any person;

(c) injury to or destruction of any property, including the "loss" of use thereof;

(d) any liability assumed by the "Insured" under contract, unless the "Insured" would have been legally liable in the absence of such contracts;

(e) claims arising out of or in connection with the financial inability to pay, insolvency, receivership, bankruptcy or liquidation of any insurance company, any reinsurer, any pool, syndicate, association or other combination formed for the purpose of providing insurance or reinsurance; or of any company in which any person has invested as a result of consultation with the "Insured";

(f) (1) claims for commissions, fees, reimbursements or the failure to collect, pay or return premium; or commingling of, or use of, clients' funds;

    (2) any claim by and between "Insureds" or between an "Insured" and any other agent or broker invovling disputes over fees, commissions or charges;

(g) any "loss" arising out of the "Insured's" promises or guarantees as to:

    (1) interest rates, or
    (2) fluctuations in interest rates, or
    (3) future premium payments or market value(s) of insurance products or any investments; however, this exclusion shall not apply to future value or similar projections when they include an appropriate disclaimer;

(h) any claim arising out of "professional services performed by the "Insured" as an actuary, accountant, attorney, tax advisor, real estate broker or real estate agent;

(i) claims arising out of the termination or discipline of any employee or agent of the "Insured", including but not limited to wrongful termination or breach of an employment or agency contract;

(j) any liability arising out of any duties or activities assumed under contract by an "Insured" as a plan administrator or named fiduciary under the Employee Retirement Income Security Act of 1974 (ERISA), the Pension Benefits Act of 1986 (COBRA) including any amendments, regulations or enabling statutes pursuant thereto, or any other similar federal, state or provincial statute or regulations;

(k) any claim made against the "Insured" based upon or arising out of any pension, profit sharing, health or welfare or other employee benefit plan or trust sponsored by the "Insured" as an employer;

(l) any proceedings against or fines or penalties levied against the "Insured" by a state, provincial or federal regulatory agency or self-regulatory body;

GS01996

(m)  claims made against the "Insured" arising out of the "Insured's" activities as the third party administrator of any plan whether "Insured" or self "Insured" and whether the "Insured" performs such activities for a fee or for no fee;

(n)  claims arising out of or alleging the unauthorized use of trade secrets or confidential or proprietary information;

(o)  any claim arising out of the development, sale or servicing of structured settlement, except that the exclusion of the sale of such products shall not apply to the agents of the Named Insured who are authorized to sell structured settlement annuities on behalf of the Named Insured;

(p)  any claim made against the "Insured" regarding "placement" of insurance of any property in the care, custody or control of the "Insured"; and

(q)  to any claim arising out of the "placement" of a Multiple Employee Welfare Arrangement with a "placement" date on or after January 1, 1992 when the product is not fully "Insured" with an admitted insurance company which is properly licensed in the applicable state or jurisdiction. However this exclusion does not apply to Prudential's STEP Program.

(r)  claims made by the Prudential Insurance Company of America and/or its subsidiaries.

(s)  any claim made by an "Insured" under this policy against another "Insured" under this policy.

PREMIUM VII

**PREMIUM.** The Named Insured will provide the Company with a roster certifying the number of rostered agents and necessary statistical information on coverages to be covered hereunder at the beginning of each policy period. As of the effective date of this policy and each anniversary date thereafter, the Named Insured shall pay to the Company an annual premium for each agent listed on the roster. The roster shall be maintained by the Named Insured and subject to audit by the Company.

SECTION VIII

**POLICY PERIOD.** This policy shall be in force during the policy period as stated in Item 3 of the Declarations. This policy may be renewed for successive policy periods of 12 months subject to both the Company offering to renew by issuing a renewal policy and the Named Insured paying the specified renewal premium in advance of the applicable expiration date. Each policy and extension period, if any, shall begin and end at 12:01 a.m. standard time at the address of the Named Insured.

SECTION IX

**EXTENSION PERIOD.** If this policy is canceled or non renewed by either the Named Insured or the Company, the Named Insured shall have the right to purchase an extension period by paying within 30 days of the termination date 50% of the annual premium as stated in the Declarations of the latest renewal endorsement. Such extension period will begin immediately following the date of termination and will run for

one year, covering claims first made against the "Insureds" and reported to the Company during the extension period caused by such negligent acts, errors or omissions occurring during any prior consecutive policy periods covered by this policy, renewal thereof, or any policy issued by the Company which this policy replaced.

## SECTION X

**EXTENDED CLAIMS REPORTING PERIOD.** The coverage otherwise applicable to any "insured agent" whose affiliation (under contract) with the Named Insured terminates will:

(A) continue to apply to claims first made against such "insured agent" for a period of thirty-six (36) months after the termination of such affiliation, but only with respect to claims arising out of negligent acts, errors or omissions arising out of the sale and/or servicing of covered products committed during the period that the "insured agent" was affiliated with the Named Insured; or

(B) Any such "insured agent" whose affiliation with the Named Insured ceases because of the retirement or disability of such "insured agent" shall have the option to purchase the continued coverage provided in paragraph (A) for a period of thirty-six (36) or sixty (60) months. Coverage shall be continued by the agent requesting within 30 days of termination, that the Named Insured continue his or her name on the roster of agents and paying a premium equal to 200% or 300%, respectively, of the last applicable annual premium.

(C) The extended reporting period does not reinstate or increase the Limit of Liability beyond the limits shown on the Declarations, nor extend the Policy period.

## SECTION XI

**NOTICE. THE INSURED SHALL GIVE PROMPT NOTICE TO THE COMPANY OF:**

(a) any claim made and of any action or suit commenced against the "Insured", and

(b) any proceeding, event, or development which might result in a claim against the "Insured";

and shall forward promptly to the Company copies of such pleadings and reports as may be requested by the Company, BUT IN NO EVENT SHALL SUCH A CLAIM, PROCEEDING, EVENT OR DEVELOPMENT BE SUBJECT TO COVERAGE UNDER THIS POLICY IF NOTICE IS GIVEN TO THE COMPANY AFTER THE TERMINATION DATE, OR THE LAST DAY OF THE EXTENSION PERIOD, IF APPLICABLE, OF THIS POLICY.

## SECTION XII

**OTHER INSURANCE.** If the "Insured" has other insurance against the "loss" covered by this policy, this policy shall be excess over any other valid and collectible insurance and shall then apply only in the amount by which the applicable limit of liability of this policy exceeds the sum of the applicable limit of liability of all such other insurance. This provision will not apply if the "Insured" has other professional liability coverage covering the same claim with the Company or one of its affiliates. In this event, only one limit of liability shall be available to the "Insured", and such limit shall be the greater of the available limits irrespective of under which policy such limit is provided.

## SECTION XIII

**TERRITORY.** This policy applies to any act, error or omission which takes place anywhere in the world, provided that the claim is made and suit is brought against the "Insured" in the United States of America, its territories or possessions and the District of Columbia, Puerto Rico, Canada or Germany.

GS01998

## SECTION XIV

**SUBROGATION.** In case of payment of "loss" by the Company hereunder, the Company shall be subrogated to the amount of such payment to the "Insured's" right of recovery against any other person or organization for such "loss", and the "Insured" shall execute all papers required and shall cooperate with the Company to secure such rights.

Any recovery (after expenses) shall be used to reduce the "loss", and so much of such recovery shall be paid to the Company as will reduce the "loss" ultimately borne by the Company to what it would have been had the recovery preceded any payment of such "loss" by the Company.

## SECTION XV

**CHANGES.** The terms of this policy shall not be waived or changed, except by endorsements issued to form a part of this policy.

## SECTION XVI

**ASSIGNMENT.** No assignment of interest under this policy shall be valid, unless the written consent of the Company is endorsed hereon.

## SECTION XVII

**ACTION AGAINST COMPANY.** No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the "Insured's" obligation to pay shall have been finally determined either by judgment against the "Insured" after actual trial or by written agreement of the "Insured", the claimant and the Company.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the Company as a party to any action against the "Insured" to determine the "Insured's" liability, nor shall the Company be impleaded by the "Insured" or his legal representative. Bankruptcy or insolvency of the "Insured" or of the "Insured's" estate shall not relieve the Company of any of its obligations hereunder.

## SECTION XVIII

**CANCELLATION.** The coverage afforded to any "Insured" under this policy may be canceled by the Named Insured as designated in Item 1 of the Declarations or the Company by such party mailing to the other at the address of such company's home office, written notice stating when not less than 60 days thereafter such cancellation shall be effective. Such mailing of notice shall be sufficient proof of notice shall be the end of the policy period. Delivery of such notice either by the Named Insured or the Company shall be equivalent to such mailing. If the Named Insured cancels, earned premium shall be the short rate amount of the annual premium. Premium adjustment may be made as soon as practical after cancellation becomes effective. The Company's check or the check of its representative mailed as aforesaid shall be sufficient tender of any refund of premium due to the Named Insured provided that if at the time of cancellation the policy limit for the indemnity period involved has been exhausted, the entire premium shall be considered earned.

GS01999

## SECTION XIX

**DECLARATIONS.** By acceptance of this policy the Named Insured agrees that the statements in the Declarations are its agreements and representations, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreement existing between the Named Insured and the Company or any of its agents relating to this insurance.

IN WITNESS WHEREOF, the Company has caused this policy to be signed by its authorized officers, and has caused it to be signed on the Declarations page by an authorized representative of the Company.

_____  
President

_____  
Secretary

POLICY NUMBER: IYA271202-6                                    ENDORSEMENT #1

## GENERAL STAR INDEMNITY COMPANY

# NON-STACKING

In consideration of the premium charged, it is hereby understood and agreed that if any **Claim** under this policy is also covered by one or more other policies issued by the Company, or by any other affiliated company of General Star Indemnity Company or any successor company, to the person or entity named in Item 1 of the Declarations or to any person who controls, is controlled by, or is affiliated by common control with, said person or entity, then with respect to such **Claim**:

(1) the Company shall not be liable under this policy for a greater proportion of the loss than the applicable limit of liability under this policy bears to the totals limits of liability of all such policies, and

(2) the maximum amount payable under all such policies shall not exceed the limit of liability of that policy referred to above which has the highest applicable limit of liability.

Nothing contained in this endorsement shall be construed to increase the limit of liability of this policy.

All other terms, conditions and exclusions of this policy remain the same.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

_____
AUTHORIZED REPRESENTATIVE

GSI-PRU-02 2/96                                               GS02001

POLICY NUMBER: IYA271202-6                                                                                      ENDORSEMENT #3

GENERAL STAR INDEMNITY COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY - PLEASE READ IT CAREFULLY.**

# MUTUAL FUNDS AND VARIABLE PRODUCTS COVERAGE ENDORSEMENT

In consideration of the premium paid the following terms and conditions shall apply.

1. Professional Services is amended to include:

   The consultation, advise, administration and service, and/or sales of Mutual Funds and variable products including variable life and variable annuities. However, coverage is only provided to an "insured" who is a "licensed Securities Broker."

2. The following DEFINITIONS are added:

   (I)   The term "licensed Securities Broker" shall mean an "insured" selling and/or servicing Mutual Funds registered with the SEC and variable products including variable life and variable annuities.

   J.    The term "Broker/Dealer" shall have the same meaning as the term used in the Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Company Act of 1940, of the Investment Advisors Act of 1940.

   K.    The term "Securities" shall have the same meaning as the term used in the Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Company Act of 1940, or the Investment Advisors Act of 1940.

3. The following EXCLUSIONS are added:

   (t)   any claim for damages sustained or alleged to have been sustained by any person or legal entity that is not or was not either a client or a prospective client of the Enrolled Outbrokerage Representative, or a client's appointed administrator, executor, receiver, or trustee(s) in bankruptcy;

   (u)   any claim arising out of the Enrolled Outbrokerage Representatives involvement with derivatives;

   (v)   any claim arising out of the willful violation of the rules and regulation of the National Association of Security Dealers or the Securities Exchange Commission or of any state securities regulatory agency.

All other terms and Conditions of this policy remain unchanged.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

_____
Authorized Representative

GSI-PRU-15 (2/97)                                                                                                       GS02002

POLICY NUMBER: IYA271921-2                                              ENDORSEMENT #5

GENERAL STAR INDEMNITY COMPANY

## SERVICE OF SUIT

Pursuant to any statue of any state, territory or district of the United States which makes provision therefore, the Company hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, and his successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted in any Court of Competent jurisdiction by or on behalf of the Insured or and beneficiary thereunder arising out of this contract of insurance, and hereby designated The Corporate Secretary, General Star Indemnity Company, Financial Centre, P.O. Box 10354, Stamford, Connecticut 06904-2354, as the person to whom said officer is authorized to mail process or true copy thereof.

All other Terms and Conditions of this policy remain unchanged.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

_____
AUTHORIZED REPRESENTATIVE

GSI-52-I600 (3/93)                                                              GS02003

POLICY NUMBER: IYA271202-6                                                                    Endorsement #4

**General Star Indemnity Company**

# 24 HOUR CARE COVERAGE ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that the definition H. "Professional Services" shall be extended to include the sale and/or servicing of the following product, but only in the state of California by "Insureds" duly licensed to sell such product in the state of California:

    24 Hour CARE Coverage

For the purposes of this endorsement, 24 Hour CARE Coverage shall be defined (in accordance with California legislation) as the "joint issuance of a workers' compensation policy with a disability insurance policy or other medical insurance coverage for non occupational injuries and illness."

Any "Insured" (as defined herein) involved in the sale and/or servicing of 24 Hour CARE Coverage must meet all education, examination and certification requirements connected with the sale of such product, in accordance with California law, in order to be eligible for the additional coverage granted by this endorsement.

Coverage provided pursuant to this endorsement shall be subject to all of the terms, conditions and exclusions of the policy to which it attaches.

All other terms, conditions and exclusions of this policy remain the same.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

*[signature]*

_____
Authorized Representative

GSI-PRU-14 (2/97)                                                                                              GS02004