
**GENERAL STAR**

General Star Management Company
550 South Hope
Suite 700
Los Angeles, CA 90071-2648
213 630-1930
213 690-1957 Facsimile

November 14, 2001

**Certified and Facsimile**
**206.623.4363**

Gail Spicuzza-Zorn
c/o John A. Bender, Esq.
**Holland & Knight LLP**
2600 Pike Tower
520 Pike Street
Seattle, Washington 98101

RE:   *Linda Arana v. Pruco Securities and Gail Spicuzza*

|  |  |  |
|---|---|---|
| Case No. | : | 00-04488 |
| Insured | : | Prudential Insurance Company of America |
| Claimant | : | Linda Arana |
| Claim No. | : | GS112018 |
| Policy Nos. | : | IYA 271202-7 and IYA 271202-8 |

Dear Ms. Spicuzza-Zorn,

This is the response of General Star Indemnity Company ("General Star") to your November 1, 2001 request that it reconsider its declination of coverage for the above-described arbitration pending before the National Association of Securities Dealers (the "*Arana Action*"). You asked that General Star reconsider its declination of coverage under policy number IYA 272202-8 (the "1999 Outbrokerage Policy"). In light of information recently provided to General Star regarding the *Arena Action*, General Star also has reconsidered coverage under policy number IYA 272202-7 (the "1998 Outbrokerage Policy").

The 1998 Outbrokerage Policy was the predecessor policy to the 1999 Outbrokerage Policy. The 1998 Outbrokerage Policy was effective February 1, 1998 through February 1, 1999 and the 1999 Outbrokerage Policy was effective from February 1, 1999 through February 1, 2000. Both policies were issued to the Prudential Insurance Company of America and provide "Insurance Company Sponsored Coverage for Insurance Agents and Brokers Professional Liability" to Prudential's Enrolled Outbrokerage Representatives". Both apply to liability incurred as a result of the sale or servicing of specified non-Prudential insurance and securities products by Enrolled Outbrokerage Representatives.

EXHIBIT "8"

GS00182



Gail Spicuzza-Zorn
c/o John A. Bender, Esq.
RE: *Linda Arana v. Pruco Securities and Gail Spicuzza*
November 14, 2001
Page 2

Pursuant to your request, General Star has reconsidered its declination of coverage in light of the most recent information provided to it. Based upon the information provided, General Star has concluded that there is no potential for coverage for the *Arana Action*, and no duty to defend, under either policy.

### RECENTLY REVEALED FACTS

The facts previously known to General Star were detailed in General Star's previous letters.[1] By letter dated October 30, 20001, however, Mr. Bender provided, for the first time, copies of 1998 correspondence about Ms. Arana's claim. The correspondence includes, among other things: (1) a letter from Keith Y. Yamada, counsel for Mr. Lockrem's estate, to Prudential, dated May 29, 1998, setting forth the estate's claim that you violated the NASD Rules of conduct and demanding disgorgement of all funds you received from Mr. Lockrem, (2) a letter from Mr. Yamada to you, dated May 29, 1998, demanding that you repay all loans made by Mr. Lockrem to you by June 25, 1998 and threatening legal action should you fail to do so, and (3) a copy of your statement to Prudential investigator Tom Johnson, dated August 25, 1998, in which you described the funds you received from Mr. Lockrem, which are the same funds the return of which had been demanded by the representatives of his estate and which are now the subject of the *Arana Action*.

### GENERAL STAR'S POLICIES

The 1998 Outbrokerage Policy and the 1999 Outbrokerage Policy are "Claims-Made-and-Reported" policies, with liability limits of $2 million per claim. The per claim limit is subject to an aggregate annual limit of $2 million per agent (inclusive of loss and defense costs), and a $1,000 per claim deductible that applies to damages only.

---

[1] See Carolyn Bell's letters to you and John Bender dated June 25, 2001 and July 23, 2001.



Gail Spicuzza-Zorn
 c/o John A. Bender, Esq.
RE: *Linda Arana v. Pruco Securities and Gail Spicuzza*
November 14, 2001
Page 3

### THE 1998 OUTBROKERAGE POLICY

General Star draws your attention to the following provisions of the 1998 Outbrokerage Policy:

### SECTION I

### COVERAGE

\* \* \*

As respects both Coverages A and B, this policy will cover claims first made against the "Insured" and reported to the Company during the policy period or any applicable extension period.

### SECTION V

**DEFINITIONS.** Whenever used in this policy:

\* \* \*

(D)   the phrase "claims first made against the 'Insured' and reported to the Company" shall mean:

   (1)   the earliest notice of legal process received by the "Insured", the earliest demand for money or services made against the "Insured"; or

   (2)   a proceeding, event or development which could in the future result in the institution of a claim or suit against the "Insured" of which the "Insured" has first become aware during the policy period;



Gail Spicuzza-Zorn
 c/o John A. Bender, Esq.
RE: *Linda Arana v. Pruco Securities and Gail Spicuzza*
November 14, 2001
Page 4

which the "Insured" has reported to the Company during the policy period.

### SECTION VII

**POLICY PERIOD.** This policy shall be in force during the policy period as stated in Item 3 of the Declarations. This policy may be renewed for successive policy periods of 12 months subject to both the Company offering to renew by issuing a renewal policy and the Named Insured paying the specified renewal premium in advance of the applicable expiration date. Each policy and extension period, if any, shall begin and end at 12:01 a.m. standard time at the address of the Named Insured.

### SECTION X

**EXTENDED CLAIMS REPORTING PERIOD.** The coverage otherwise applicable to any "insured agent" whose affiliation (under contract) with the Named Insured terminates will:

(A)   continue to apply to claims first made against such "insured agent" for a period of thirty-six (36) months after the termination of such affiliation, but only with respect to claims arising out of negligent acts, errors or omissions arising out of the sale and/or servicing of covered products committed during the policy period that the "insured agent" was affiliated with the Named Insured; or

(B)   any such "insured agent" whose affiliation with the Named Insured ceases because of the retirement or disability of such



Gail Spicuzza-Zorn
c/o John A. Bender, Esq.
RE: *Linda Arana v. Pruco Securities and Gail Spicuzza*
November 14, 2001
Page 5

"insured agent" shall have the option to purchase the continued coverage provided in paragraph (A) for a period of thirty-six (36) months or sixty (60) months. Coverages shall be continued by the agent requesting within 30 days of termination, that the Named Insured continue his or her name on the roster of agents and paying a premium equal to 200% or 300%, respectively, of the last applicable annual premium.

(C) The extended reporting period does not reinstate the Limit of Liability beyond the limits shown on the Declaration nor extend the Policy period.

---

## SECTION XI

**NOTICE. THE INSURED SHALL GIVE PROMPT NOTICE TO THE COMPANY OF:**

(a) any claim made and of any action or suit commenced against the "Insured", and

(b) any proceeding, event, or development which might result in a claim against the "Insured";

and shall forward promptly to the Company copies of such pleadings and reports as may be requested by the Company, BUT IN NO EVENT SHALL SUCH A CLAIM, PROCEEDING, EVENT OR DEVELOPMENT BE SUBJECT TO COVERAGE UNDER THIS POLICY IF NOTICE IS GIVEN TO THE COMPANY AFTER THE TERMINATION DATE, OR THE LAST DAY OF THE EXTENSION PERIOD, IF APPLICABLE, OF THIS POLICY.



Gail Spicuzza-Zorn
 c/o John A. Bender, Esq.
RE: *Linda Arana v. Pruco Securities and Gail Spicuzza*
November 14, 2001
Page 6

## THE 1999 OUTBROKERAGE POLICY

General Star draws your attention to the following provisions of the 1999 Outbrokerage Policy:

### SECTION I

#### COVERAGE

As respects both Coverages A and B, this policy will cover claims first made against the "Insured" and reported to the Company during the policy period or any applicable extension period. This policy shall apply to claims arising out of negligent acts, errors or omissions committed prior to the inception date of coverage under this policy, and not excluded hereunder as long as such negligent acts, errors or omissions:

(a)  took place while the "insured agent" was licensed with Prudential Insurance Company of America;

(b)  the claim was first made against the "insured agent" during the policy period;

(c)  and the "insured agent" had no knowledge of such claims as of the inception date of his or her coverage under this policy; and no other valid and collectible insurance is available to the "insured agent" for the claim in question.

### SECTION V



Gail Spicuzza-Zorn
c/o John A. Bender, Esq.
RE: *Linda Arana v. Pruco Securities and Gail Spicuzza*
November 14, 2001
Page 7

DEFINITIONS. Whenever used in this policy:

\* \* \*

(D) the phrase "claims first made against the 'Insured' and reported to the Company" shall mean:

(1) the earliest notice of legal process received by the "Insured", the earliest demand for money or services made against the "Insured"; or

(2) a proceeding, event or development which could in the future result in the institution of a claim or suit against the "Insured" of which the "Insured" has first become aware during the policy period;

which the "Insured" has reported to the Company during the policy period.

---

SECTION VII

**POLICY PERIOD.** This policy shall be in force during the policy period as stated in Item 3 of the Declarations. This policy may be renewed for successive policy periods of 12 months subject to both the Company offering to renew by issuing a renewal policy and the Named Insured paying the specified renewal premium in advance of the applicable expiration date. Each policy and extension period, if any, shall begin and end at 12:01 a.m. standard time at the address of the Named Insured.

---

GS00188

Case 1:04-cv-00205-DAE-BMK     Document 76-9     Filed 10/17/2006     Page 8 of 12



Gail Spicuzza-Zorn
c/o John A. Bender, Esq.
RE: *Linda Arana v. Pruco Securities and Gail Spicuzza*
November 14, 2001
Page 8

## SECTION XI

**NOTICE. THE INSURED SHALL GIVE PROMPT NOTICE TO THE COMPANY OF:**

(a)  any claim made and of any action or suit commenced against the "Insured", and

(b)  any proceeding, event, or development which might result in a claim against the "Insured";

and shall forward promptly to the Company copies of such pleadings and reports as may be requested by the Company, BUT IN NO EVENT SHALL SUCH A CLAIM, PROCEEDING, EVENT OR DEVELOPMENT BE SUBJECT TO COVERAGE UNDER THIS POLICY IF NOTICE IS GIVEN TO THE COMPANY AFTER THE TERMINATION DATE, OR THE LAST DAY OF THE EXTENSION PERIOD, IF APPLICABLE, OF THIS POLICY.

## GENERAL STAR'S COVERAGE POSITION

A.  **There Is No Potential For Coverage Under The 1998 Outbrokerage Policy Because The Claim Was Not Promptly Reported To General Star During The Policy Period**

The letters provided by Mr. Bender on October 30, 2001 establish that you first received a demand for money from Mr. Lockrem's estate on May 29, 1998. They further establish that you were first made aware of proceedings that could result in the institution of a claim or suit such as the *Arana Action* no later than May 29, 1998. Thus, pursuant to the terms of the policy, the claim was "first made" during the period of the 1998 Outbrokerage Policy.



Gail Spicuzza-Zorn
c/o John A. Bender, Esq.
RE: *Linda Arana v. Pruco Securities and Gail Spicuzza*
November 14, 2001
Page 9

The policy explicitly limits coverage, however, to claims that are both "first made" and "reported" during the policy period, *i.e.*, prior to the termination date. The policy also conditions coverage on the "prompt" reporting of claims. The claim that resulted in the *Arana Action* was not reported to General Star until February 7, 2001 - two years after the 1998 Outbrokerage Policy terminated and more than two and a half years after the claim was first made. Accordingly, the claim was not "promptly" reported to General Star. The reporting of the claim on February 7, 2001 is too late to qualify for coverage under the 1998 Outbrokerage Policy.[2]

**B.    There Is No Potential For Coverage Under The 1999 Outbrokerage Policy Because The Claim Was Not "First Made" During The Policy Period**

As explained above, the letters provided by Mr. Bender on October 30, 2001 establish that the claim being asserted against you in the *Arana Action* was "first made" no later than May 29, 1998. Like the earlier policy, the 1999 Outbrokerage Policy limits coverage to claims "first made" during the policy period and does not provide coverage for claims, like those asserted by Mr. Lockrem's estate, that were "first made" prior to the inception of the policy. In addition, the policy explicitly precludes coverage for claims based on acts, errors or omissions committed prior to the inception date. The correspondence provided by Mr. Bender's October 30, 2001 letter establishes that you had knowledge of the facts by May 29, 1998 - eight months prior to the 1999 Outbrokerage Policy's inception date.

---

[2] The 1998 Outbrokerage Policy does not have an extended reporting period that could apply in the context of this claim. Although Section X provides for an extended reporting period in the event of an insured agent's termination, that provision only provides a continuation of coverage that is "otherwise applicable" at the time of termination for a specified number of months after termination. Because your termination of affiliation with Prudential ceased long after the expiration of 1998 Outbrokerage Policy, no "otherwise applicable" coverage existed under the policy that could be "continued".


**GENERAL STAR**

Gail Spicuzza-Zorn
c/o John A. Bender, Esq.
RE: *Linda Arana v. Pruco Securities and Gail Spicuzza*
November 14, 2001
Page 10

Finally, despite such knowledge, the *Arana Action* claim was not reported to General Star until February 1, 2001 - more than a year after the 1999 Outbrokerage Policy's termination date and more than a year and a half after the claim was first made. Such late reporting violates the "prompt notice" provision of the policy.

---

Further limitations and exclusions may be applicable to the *Arana Action*, however, because General Star has concluded that there is no potential for coverage for the *Arana Action*, any discussion of those limitations and exclusions would be purely speculative at this time. Because of the possibility that other limitations and exclusions might apply, General Star specifically reserves its right to decline coverage for the *Arena Action* under any of the terms, conditions, limitations, exclusions, and other provisions of General Star's policies not specifically referenced in this letter.

Because other reasons may exist for which there is no potential for coverage under General Star's policies, the reasons set forth in this letter for General Star's denial of coverage are not intended to be exclusive and are based only on information available to General Star at the present time. General Star reserves the right to rely upon any additional reasons to deny coverage, as appropriate, in light of any new information provided to General Star.

General Star also specifically reserves the right to conduct an additional investigation or analysis of the claim if it receives information that was not previously provided. Accordingly, no acts by any of General Stars agents, attorneys, or employees are to be construed as a waiver or operate as an estoppel with respect to any of General Star's rights under the policies. In addition, no conduct of General Star or its employees, agents, or attorneys is to be construed as a waiver or surrender of any term, condition, limitation, exclusion, or other provision of the policies.

GS00191


**GENERAL STAR**

Gail Spicuzza-Zorn
c/o John A. Bender, Esq.
RE: *Linda Arana v. Pruco Securities and Gail Spicuzza*
November 14, 2001
Page 11

Finally, General Star specifically reserves its right to resolve any coverage dispute or contract issue, if necessary, by filing an action for declaratory relief.

If you have any questions or comments concerning General Star's position, or if you have any information that would suggest that anything set forth in this letter is inaccurate, incorrect, or incomplete, please advise us immediately. General Star will consider any additional information you provide to ensure that you are provided all benefits to which you are entitled, if any, under General Star's policies with respect to the *Arana Action*.

If you believe this claim has been wrongfully denied by General Star, you may have this matter reviewed by:

> California Department of Insurance
> Claims Services Bureau
> 300 South Spring Street
> 11th Floor
> Los Angeles, CA 90013
> 1-800-927-4357

Very truly yours,

GENERAL STAR MANAGEMENT COMPANY

For: Nicholas J. Fanelli
Vice President
Claims Examiner

GS00192



Gail Spicuzza-Zorn
 c/o John A. Bender, Esq.
RE: *Linda Arana v. Pruco Securities and Gail Spicuzza*
November 14, 2001
Page 12

bcc:    Amy Dantzler, Esq.

        Thomas Greiff, Esq.

GS00193